STATE of Minnesota, Respondent,

v.

Scott Peter ZENANKO, Appellant.

No. C7–95–1733.

Supreme Court of Minnesota.

Aug. 1, 1996.

Michael Cromett, Asst. State Public Defender, St. Paul, for Appellant.

Robert Stanich, Catherine Keane, Asst. Attys. General, St. Paul, Bradley Rhodes, Asst. Crow Wing County Attorney, Aitkin, for Respondent.

## OPINION

COYNE, Justice.

Defendant, Scott Peter Zenanko, was found guilty by a district court jury of burglary, first-degree felony murder, first-degree premeditated murder, and attempted first-degree premeditated murder, Minn.Stat. §§ 609.17, subd. 1, 609.185(1) and (3), 609.582, subd. 1(c), and was sentenced by the trial court to consecutive terms of life in prison for each murder conviction, a consecutive term of 180 months in prison for the attempted murder conviction and a concurrent term of 48 months for the burglary conviction. On this appeal from the judgment, defendant raises claims of evidentiary insufficiency as to burglary and felony murder, improper admission of evidence, and prosecutorial misconduct, and in his pro se supplemental brief, he has added claims of prejudicial security measures at trial and excessive bail.

In the early morning hours of October 3, 1994, Michael Barhorst, his fiancee Cindy Shepard, and Shepard's two-year-old child were asleep in one bedroom of their Brainerd-area apartment. Michael's brother Thomas was asleep in the other bedroom, and a visiting young family friend was on a hide-a-bed in the living room. Because it was a warm night, the interior door of the apartment was left open, but the screen door was latched.

At some time after midnight, defendant started to cut the screen door. The 13–year–

old guest, who was unable to sleep, initially thought the "scratching noise" made by defendant was coming from some raccoons, but as "it got worse," the boy sat up, saw the shadow of a head at the door, and called for Michael Barhorst, who came out of the bedroom. Barhorst went to the door, asked who was there, and defendant responded, "Is Cindy there?" (Sometime prior to becoming engaged to Barhorst, Cindy Shepard had rebuffed defendant's romantic advances.) When Barhorst again asked who was there, defendant said "Scott." Barhorst remarked that he didn't appreciate being awakened at that hour, unlatched the door, and as defendant gained entry he began stabbing Barhorst with his Gerber Mark II, double-edged, serrated, fixed-blade knife. Michael called out to his brother Thomas that he'd been stabbed and retreated into the bedroom, holding his neck and covered with blood. Shepard, who was still in the bedroom, saw defendant coming towards her, so she slammed the bedroom door shut, locked it and pushed against it with her body as defendant began pounding on the door. When Thomas Barhorst attempted to intervene, defendant stopped pounding long enough to disable Thomas and resumed pounding until he broke the door down and began stabbing Shepard in the shoulder, face and abdomen as she lay wedged between the wall and the door. Michael Barhorst managed to pull defendant away from Shepard long enough for her to escape from the apartment. Defendant, who followed Shepard to a neighboring cabin, pounded on the cabin door and called out, "Cindy, I'm sorry I had to do this." Then defendant drove away. When police arrived, they found the bodies of Michael and Thomas Barhorst in a pool of blood on the floor of the dining area near the bedrooms. Shepard survived her wounds.

We have with great care examined the record and separately considered each of defendant's claims and their claimed cumulative effect upon defendant's right to a fair trial. We conclude that, although circumstantial, the evidence supporting defendant's guilt is overwhelming and that the facts and circumstances, when looked at in the light most favorable to the verdict, are wholly consistent with guilt of burglary, *State v. Van Meveren,*

290 N.W.2d 631 (Minn.1980), felony murder, *State v. Bergeron,* 452 N.W.2d 918 (Minn. 1990), premeditated murder, *State v. Smith,* 367 N.W.2d 497 (Minn.1985), and its attempt, *State v. Cox,* 278 N.W.2d 62 (Minn.1979), and inconsistent with any theory of defendant's innocence.

■ Zenanko first contends that the evidence is insufficient to support his conviction of first-degree burglary. Minnesota Statutes § 609.582, subd. 1 (1994) provides in relevant part as follows:

Whoever enters a building without consent and with intent to commit a crime, or * * * commits a crime while in the building, commits burglary in the first degree * * *.

A person "enters a building without consent" when he does any of the following described acts:

(a) to enter a building without the consent of the person in lawful possession;

(b) to enter a building by using artifice, trick, or misrepresentation to obtain consent to enter from the person in lawful possession; or

(c) to remain within a building without the consent of the person in lawful possession.

Minn.Stat. § 609.581, subd. 4 (1994).

Zenanko claims that he did not enter the apartment by force and in his brief asserts that Michael Barhorst unlatched the screen door and consented to Zenanko's entry after Zenanko had "engaged in conversation with Barhorst identifying himself and his purpose for being there." If, as Zenanko claims, he did not force his way into the apartment, it is abundantly clear that he misrepresented "his purpose for being there," and gained entry by ruse. *Van Meveren,* 290 N.W.2d at 633. Accordingly, the jury was fully justified in finding Zenanko guilty of first-degree burglary.

■ Although defendant primarily and quite properly questions the admission of certain evidence, including two complete books, one purporting to be a manual for a "hit man" and the other dealing with prison life, found in defendant's bedroom at his

parents' house, we need not discuss defendant's objections to the trial court's rulings on these issues or the other issues raised. A defendant is entitled to a fair trial, not an error-free trial. *State v. White*, 295 Minn. 217, 225, 203 N.W.2d 852, 858 (1973). In this case, the alleged errors and misconduct, taken cumulatively in the context of defendant's trial as a whole, fall far short of establishing prejudice of the kind warranting a new trial. *Compare State v. Post*, 512 N.W.2d 99 (Minn. 1994); *State v. Underwood*, 281 N.W.2d 337 (Minn.1979). As for the issues raised in Zenanko's pro se brief, they are completely meritless. Zenanko complains that the prosecutor knowingly elicited perjured testimony. Nothing in the record suggests, however, either that the testimony was false or that the prosecutor knew or even had reason to speculate about its truthfulness.

Zenanko also contends that "extraordinary" security measures deprived him of a fair trial. The record is devoid of evidence that the jury was even aware of any security measures. But even if we accept Zenanko's allegations as true, those allegations are not of inherently prejudicial security measures of the kind which create an atmosphere inconsistent with the presumption of innocence or justify a new trial in the face of the overwhelming evidence of Zenanko's guilt. In short, Zenanko has not even alleged, much less demonstrated, prejudice. Therefore, "the inquiry is over." *Holbrook v. Flynn*, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347, 89 L.Ed.2d 525 (1986); *see State v. Aguilar*, 352 N.W.2d 395 (Minn.1984).

Finally, defendant's claim of excessive bail is moot.

Affirmed.