STATE of Minnesota, Respondent,

v.

Clay Carl CLARK, Appellant.

No. A04–1101.

Supreme Court of Minnesota.

Oct. 12, 2006.

John M. Stuart, State Public Defender, Steven P. Russett, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAGE, Justice.

Following a jury trial in Hennepin County District Court, appellant Clay Carl Clark was convicted of being a prohibited person in possession of a firearm, fleeing a police officer in a motor vehicle, and theft of a motor vehicle. On appeal to the court of appeals, Clark argued that the trial court erred in denying his requests for substitute counsel, for advisory counsel after he elected to represent himself, and to relinquish self-representation. The court of appeals affirmed. *State v. Clark,* 698 N.W.2d 173 (Minn.App.2005). Concluding that any error in the trial court's failure to exercise its discretion under our rules of criminal procedure for designation of advisory counsel does not warrant a new trial, we affirm.

Shortly after 1:00 a.m. on November 22, 2003, Minneapolis Police Officer Michael Geere was seated in his parked squad car on 21st Avenue North, facing east, when he saw Clark driving westbound in a red 1993 Ford Tempo. Earlier that evening, a woman had reported that her 1993 red Ford Tempo had been stolen by a man wearing a black leather, waist-length jacket. Officer Geere looked at the license plate of the red Tempo and realized the car was the one that had been reported stolen. As Clark "slowly rolled past" Geere's squad car, he and the officer made eye contact. The officer turned his squad car around and followed Clark, who turned north on Lyndale. The officer notified dispatch and continued to follow Clark. When Clark began to accelerate, the officer activated his squad car's lights and siren. Clark continued on at speeds up to 40 mph.

Officer Geere pursued Clark for several blocks and through an alley, all the while reporting his location over the radio so other officers would know where he was going. Clark eventually took a corner too fast, lost control, and crashed into a boulevard tree. Clark got out of the Tempo and fell down in front of Officer Geere's car. As Officer Geere got out of his car, Clark got up and started to run, but a 12–foot–high retaining wall blocked him from going west. As Officer Geere chased Clark up a residential driveway and through the backyard to a chain-link fence, he saw Clark reaching into his jacket and assumed Clark was either going for a gun or trying to dump drugs.

Officer Geere tackled Clark, and the two rolled over the fence. The officer instructed Clark to put his hands behind his back, but Clark would not comply. After a brief struggle, during which Clark's jacket came off, Officer Richard Hand arrived and helped take Clark into custody. Officer Geere picked up Clark's black waist-length jacket and recovered a loaded 9 millimeter semiautomatic handgun from the inside pocket. As part of routine police practice, Officer Geere removed the magazine and the round that was in the chamber.

Clark was charged with being a prohibited person in possession of a firearm in violation of Minn.Stat. § 624.713, subd. 1(b) (2004); fleeing a police officer in a motor vehicle in violation of Minn.Stat. § 609.487, subd. 3 (2004); receiving stolen property in violation of Minn.Stat. § 609.53, subd. 1 (2004); and theft of a motor vehicle in violation of Minn.Stat. § 609.52, subd. 2(17) (2004). At Clark's first appearance on November 26, 2003, upon finding eligibility, the trial court appointed a public defender to represent Clark. At an omnibus hearing on December 15, 2003, Clark pleaded not guilty and demanded a speedy trial. Clark also indicated to the court that he intended to hire private counsel. On January 5, 2004, Clark appeared with his public defender

and informed the court that he was unable to retain private counsel.

On February 17, 2004, Clark appeared for trial with his public defender. Following a *Rasmussen* hearing, jury selection commenced. On February 18, Clark informed the trial court that he wanted another attorney because his assigned public defender was "not representing [his] interests in this case." The request was denied. Later that day, after completion of jury selection, Clark informed the court that he wanted to represent himself. The court explained to Clark that, in the court's experience, it was not a good idea for a defendant to represent himself, that he would not be granted a continuance, that if granted the right to represent himself he would not be permitted to change his mind later, that he would be held to the same standards as an attorney, and that he would not have the assistance of standby counsel. Following a formal and comprehensive waiver-of-counsel inquiry, the court granted Clark's request to proceed pro se and discharged his public defender.

Trial proceeded with the testimony of the car owner, who said that at around 7:00 p.m. on November 21, 2003, she was dropping her child off at her day-care provider's home when she noticed Clark sitting at a nearby bus stop. As she opened the day-care provider's screen door, she saw Clark get up and walk to the middle of the street as if looking for a bus and, as she closed the screen door after handing her child to the day-care provider, she heard the door to her car slam and saw Clark drive off in it.

Officer Geere testified regarding the circumstances surrounding his pursuit and arrest of Clark six hours later. During Officer Geere's cross-examination, after encountering some frustration with attempts to impeach the officer's testimony with prior statements, Clark sought to relinquish self-representation. In seeking to relinquish self-representation, Clark asserted that in choosing to represent himself he thought that he would have his discharged attorney to help him during trial. He also stated that he thought it was his "constitutional right to, you know, have an attorney present." The court then reminded Clark that he had been told before he relinquished his appointed counsel that he would not have the assistance of standby counsel. In the end, standby counsel was not appointed, and Clark's request to rescind self-representation was denied. After watching the means by which the state rehabilitated the witness with prior statements on redirect, Clark used the same means for his impeachment on re-cross. Officer Hand testified as to his role in the pursuit and arrest. At the end of the state's case-in-chief, by pretrial agreement, the court read the parties' stipulation that Clark was legally prohibited from possessing a handgun so as to prevent unduly prejudicial information from getting to the jury.

Clark testified on his own behalf and admitted the offense of fleeing a police officer in a motor vehicle. He explained that he fled because he had drug paraphernalia in his possession at the time. He said that when the officer turned on the squad car's lights, he "panicked" and ran into a tree; and when "[he] got out, * * * and [the officer] almost ran [ ] over [him]. [He] got up and just ran, you know. Wasn't no excuse for that." But he denied stealing the red 1993 Ford Tempo, denied having knowledge that it was stolen, and denied possession of the handgun.

The jury found Clark guilty as charged. Judgment of conviction was entered on the

firearm, fleeing, and theft offenses.[1] Clark was sentenced to an executed aggregate concurrent term of 60 months in prison. The court of appeals affirmed, and we granted further review. Clark claims reversible error in the denial of substitute counsel, advisory counsel, and relinquishment of self-representation.

## I.

We first address Clark's substitute counsel claim. The decision to grant or deny a request for substitute counsel lies within the trial court's discretion. *State v. Worthy*, 583 N.W.2d 270, 278 (Minn.1998). In *Worthy*, we held that a defendant's constitutional right to counsel "includes a fair opportunity to secure an attorney of choice, but an indigent defendant does not have the unbridled right to be represented by the attorney of his choice." *Id.* We further held that "[a] court will grant an indigent's request for different counsel 'only if exceptional circumstances exist and the demand is timely and reasonably made.'" *Id.* (quoting *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977)).

During jury selection on the second day of what was anticipated to be a two- or three-day trial, Clark sought substitute counsel, explaining:

> I got evidence that can help prove my innocence, and everytime I tell [the public defender] something about it, you know, she tell[s] me that, you know, it's not admissible or that's not happening, and I've been here four months, she has never came to see me or gave me any paperwork telling me that—you know,

this what this statement is. Then she told me that it's like an open[-]and[-]shut case, that I need to plead to 60 months or, you know, I can't defend this, you know, so I don't—you know, everytime we—you know, she talked to me, we sitting in court, you know, I haven't had a chance to talk to her about no witnesses, nothing. I speak—you know, something to prove my innocence and I feel like she just don't have the same interests, you know.

In denying Clark's request, the trial court noted that Clark had requested a speedy trial and that the case had already been continued to give him an opportunity to retain private counsel. The court told Clark, "we moved [another] case to accommodate" his speedy-trial demand "and there is a strong reluctance to continue matters" after the trial begins. The court informed Clark, "[u]nder the [local public defender's internal] rules, you would not be re-assigned a different lawyer from the Public Defender's office."

Clark contends that he raised substantial complaints about the effectiveness of the representation provided by appointed counsel, amounting to "exceptional circumstances" such that the trial court should have conducted a more "searching inquiry" before ruling on the request. That may be so, particularly when a defendant voices serious allegations of inadequate representation before trial has commenced.[2] But here it is evident from the record that the trial court was satisfied that appointed counsel had conducted a proper investigation, was thoroughly prepared for trial, and had, in fact, maintained contact with Clark. The record reflects that before

---

1. The receiving-stolen-property offense was "merged" with the theft offense at sentencing.

2. When defense counsel and defendant disagree on significant matters of tactics or strategy, we have suggested that a record should

be made by "means which best serves to protect both the confidentiality of the attorney-client relationship and the safeguards present in the criminal system." *State v. Elling*, 355 N.W.2d 286, 294–95 (Minn.1984).

trial, counsel for both sides engaged in discussions with the court on a number of procedural and substantive matters. Appointed counsel challenged the legality of the stop and search incident to Clark's arrest at the *Rasmussen* hearing. Counsel also obtained rulings favorable to Clark, including the exclusion of an attempted-murder conviction that had been offered for impeachment use. During what the record reflects to have been a thorough waiver-of-counsel inquiry, the trial court ascertained that Clark's counsel had gone over evidence with Clark. The court also told Clark that his counsel was skilled, experienced, and prepared for trial.

Moreover, Clark's request for substitute counsel, like the request made in *Worthy*, was untimely. In *Worthy*, the defendants fired their public defenders on the first morning of trial, telling the trial court that they "felt they were not being properly represented." *Worthy*, 583 N.W.2d at 279. Their specific complaint was that "[their] attorneys told them that they did not have a strong case." *Id.* at 274. The defendants asked the court to grant them a continuance so that they could obtain substitute counsel. *Id.* The court denied the defendants' request, stating the case was set for trial and would start that morning. *Id.* The court further explained to the defendants that if they rejected their public defenders' representation they could proceed pro se with the public defenders as advisory counsel. *Id.* On appeal to our court, the defendants argued, among other issues, that the trial court erred by refusing to grant their request for substitute counsel. *Id.* at 278. We rejected that claim, holding that the defendants' request for substitute counsel, which was made on the morning of trial and after the jury selection had begun, was not timely. *Id.* at 274, 279.

The facts here are strikingly similar to those in *Worthy*. As in *Worthy*, Clark claims that his public defender was not representing his interests. Also, as in *Worthy*, the request for substitute counsel was made after jury selection had begun. Further, as the trial court noted, Clark had requested a speedy trial and his case had been moved to accommodate that request. On these facts, we hold that the denial of Clark's request for substitute counsel was not an abuse of discretion.

## II.

We next consider Clark's argument that the denial of his request for advisory counsel was reversible error because (1) the Minnesota Constitution guarantees advisory counsel and (2) the court failed to exercise its discretion to appoint advisory counsel pursuant to Rule 5.02, subdivision 2, of the Minnesota Rules of Criminal Procedure, which provides that a trial court "may appoint 'advisory counsel' to assist the accused who voluntarily and intelligently waives the right to counsel."

We first address Clark's claim that he is entitled to advisory counsel under the Minnesota Constitution. According to Clark, although the Sixth Amendment of the United States Constitution, which states that a defendant has the right to "have the assistance of counsel *for* his defense" (emphasis added), does not require the appointment of advisory counsel for a pro se defendant, the Minnesota Constitution guarantees the appointment of advisory counsel for a pro se defendant. We review issues of constitutional interpretation de novo. *State v. Brooks*, 604 N.W.2d 345, 348 (Minn.2000). Minnesota Constitution, Article 1, Section 6, provides, in pertinent part:

> In all criminal prosecutions * * * [t]he accused shall enjoy the right to be informed of the nature and cause of the

accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel *in* his defense.

(Emphasis added.)

■ We have stated that "[i]t is our responsibility as Minnesota's highest court to independently safeguard for the people of Minnesota the protections embodied in our constitution." *State v. Askerooth,* 681 N.W.2d 353, 362 (Minn.2004). However, "in independently safeguarding these protections 'we will [not] cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution.' " *Id.* (quoting *State v. Fuller,* 374 N.W.2d 722, 726–27 (Minn.1985)). This court will not lightly reject a Supreme Court interpretation of identical or substantially similar language. *State v. Harris,* 590 N.W.2d 90, 97–98 (Minn.1999). Here, the language of the Minnesota Constitution is substantially similar to that of the United States Constitution, and we see no reason to construe the Minnesota Constitution more broadly than the United States Constitution. We therefore decline to read the Minnesota Constitution as guaranteeing advisory counsel for pro se defendants.

■ We now turn to Clark's claim of reversible error in the denial of advisory counsel pursuant to Minn. R.Crim. P. 5.02, subd. 2. According to Clark, the trial court, mistakenly believing that it lacked authority to appoint advisory counsel, denied his request for advisory counsel without exercising any discretion and, he asserts, committed reversible error in the failure to exercise this discretion. The state argues that no error occurred because Minn.Stat. § 611.17, subd. 1(b)(4) (2004), which states that "[t]he court must not appoint the district public defender as advisory counsel,"

precluded the appointment of advisory counsel in this case.

As a preliminary matter, we note that, to the extent that Minn.Stat. § 611.17, subd. 1(b)(4), purports to limit judicial discretion to appoint advisory counsel, it is in conflict with Minn. R.Crim. P. 5.02, subd. 2. In *State v. Johnson,* 514 N.W.2d 551, 554 (Minn.1994), we stated:

Determination of procedural matters is a judicial function. The legislature, for its part, determines matters of substantive law and has carefully protected that prerogative by providing that the Rules of Criminal Procedure "shall not abridge, enlarge, or modify the substantive rights of any person." As a matter of substantive law, the legislature has "[t]he power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct * * *." Both branches agree that "[i]n matters of procedure rather than substance, the Rules of Criminal Procedure take precedence over statutes to the extent that there is any inconsistency."

\* \* \* \*

\* \* \* This court has distinguished substantive and procedural law as follows:

[B]y substantive rights the legislature was referring to statutes which declare what acts are crimes and prescribe punishment for their violation, rather than statutes which regulate the steps by which the guilt or innocence of one who is accused of a criminal statute is determined.

(Citations omitted.) Clearly, the appointment of counsel under Minn. R.Crim. P. 5.02, subd. 2, is a procedural matter for judicial determination. Accordingly, to the extent that Minn.Stat. § 611.17, subd. 1(b)(4), conflicts with Rule 5.02, the rule takes precedence.

The next question is whether the failure to exercise discretion regarding the appointment of advisory counsel for Clark was reversible error. In reliance on *People v. Bigelow*, 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994, 1001 (1985), Clark argues that the trial court's failure to consider appointing advisory counsel warrants per se reversal. In *Bigelow*, the California Supreme Court held that, similar to the denial of the right to appointed counsel and to self-representation, a trial court's failure to exercise discretion with respect to the appointment of advisory counsel, when "a refusal to so appoint would be an abuse of discretion," also warrants "the same rule of per se reversal." *Id.*

*Bigelow* is distinguishable. The court in *Bigelow* specifically stated that "we have no doubt that the trial court, had it realized that it could appoint advisory counsel, would have exercised its discretion to do so" and "[h]ad the [trial] court refused, we would find that action an abuse of discretion." *Id.* That is not the case here. We cannot say with any certainty that, had the trial court exercised its discretion, it would have appointed advisory counsel for Clark. Nor can we say on this record that, had the trial court exercised its discretion and declined to appoint advisory counsel, the trial court would have abused its discretion. Further, *Bigelow* was a capital case, and as the California Supreme Court recognized, "[s]uch cases raise complex additional legal and factual issues beyond those raised in an ordinary felony trial," *id.*, 209 Cal.Rptr. 328, 691 P.2d at 1000, and that it was "unquestionably true" that the defendant, who only had a ninth grade education, "was not competent to defend a capital case." *Id.*, 209 Cal.Rptr. 328, 691 P.2d at 1001. This non-capital case does not present any such complex legal and factual issues.

Relying on our decisions in *State v. Costello*, 646 N.W.2d 204 (Minn.2002), and *State v. Logan*, 535 N.W.2d 320 (Minn. 1995), Clark asserts that "the rationale of *Bigelow* applies equally to non-capital cases." *Costello* and *Logan*, however, are also clearly distinguishable. Those cases presented issues at the core of a defendant's right to a fair trial. In *Costello*, we held that a trial court's error in allowing jurors to question witnesses was not subject to harmless error analysis. 646 N.W.2d at 215. We explained that, "because juror questions may imperceptibly affect the production of evidence, the presentation of the state's case, and the jury's deliberations, it is impossible for an appellate court to infer from a record that the verdict rendered is 'surely unattributable' to the error." *Id.* In *Logan*, we reversed the defendant's conviction and remanded for a new trial after we concluded that actual prejudice did result from the seating of a juror who during voir dire had expressed a bias in favor of the police. 535 N.W.2d at 324. We further concluded that the error in allowing the biased juror to sit "undermine[s] the basic 'structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.'" *Id.* (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263–64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). Unlike the errors in *Costello* and *Logan*, the trial court's failure to exercise discretion here did not affect the structural integrity of the tribunal. Clark did not have a constitutional right to advisory counsel and, as noted, we cannot say that had the trial court exercised its discretion and declined to appoint advisory counsel it would have been an abuse of discretion. Minnesota Rule of Criminal Procedure 5.02, subd. 2, simply provides that the trial court "may," at its direction, appoint advisory counsel.

Having concluded that any error in failing to exercise discretion regarding the appointment of standby counsel is not subject to per se reversal, we now turn to whether the trial court's failure to exercise discretion in this case warrants a new trial. The role of advisory counsel is "fundamentally different from the role of counsel generally." *State v. Richards*, 552 N.W.2d 197, 207 (Minn.1996). "Standby counsel are present 'to steer a defendant through the basic procedures of the trial' and 'to relieve the judge of the need to explain and enforce basic rules of [the] courtroom.'" *Id.* at 206 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)). But the standard by which standby counsel's representation is to be measured "remains an open question." *Id.* at 207.

Clark claims prejudice in the denial of advisory counsel because there were "numerous instances where he could have benefited from counsel's presence." Specifically, Clark contends that advisory counsel could have assisted him in "subpoenaing his defense witnesses," in "advising him on how to properly impeach the state's witnesses with their prior inconsistent statements," in "helping him obtain an admissible weather report," in "consulting with him about the pros and cons of testifying on his own behalf," and in "helping him to fashion a response to the jury questions." Based on our review of the record, we conclude that Clark has not made a showing that lack of advisory counsel resulted in prejudice to him.

The only issues in serious dispute were whether Clark possessed the firearm admitted into evidence and whether he either stole the 1993 Ford Tempo or had knowledge that it had been stolen. Clark identified two women whose names had been supplied to him by a jail inmate who said the women were at a bar two blocks away from where Clark was arrested and "saw it." Clark suggested that the witnesses would testify that Officer Geere's squad car struck him. But Clark's own testimony belies this claim and, in any event, the proffered testimony would have had no bearing on the issues in dispute. Neither would a weather report have been germane to these issues.[3] As for impeachment of the state's witnesses with prior inconsistent statements, with some help from the prosecutor and the trial court, Clark accomplished this. As for advice in deciding whether or not to testify, the record fairly well establishes that Clark firmly believed his testimony was essential. With respect to the jury's questions during deliberations, the record reflects that the court's answers were proper.

The primary justifications for advisory counsel are: ensuring the fairness of the criminal justice process, promoting judicial efficiency, and preserving the appearance of judicial impartiality. Minn. R.Crim. P. 5.02, subd. 2, cmt.; Marie Higgins Williams, *The Pro Se Defendant, Standby Counsel, and the Judge: A Proposal for Better–Defined Roles*, 71 U.

---

**3.** In pretrial discussions, counsel for both sides and the court talked about the admissibility of copies of certain web pages obtained from the internet website "wunderground.com" containing weather information for the time period when Clark was arrested. Because the documents did not contain the relevant precipitation data, the public defender attempted to locate a reporting service that did have that information. Clark wanted to impeach the officer's testimony that Clark could not "accelerate" away from the officer during the police chase because of snowy conditions in the alley, but the officer also said that Clark was driving a vehicle with a four-cylinder engine. Whether there was snow in the alley during the police chase was not germane to any of the disputed elements of the charged offenses.

Colo. L.Rev. 789, 804–06 (2000). We have long encouraged use of advisory counsel. *See State v. Jones,* 266 N.W.2d 706, 711 n. 1 (Minn.1978). But a defendant is entitled to a fair trial, not an error-free trial. *State v. Zenanko,* 552 N.W.2d 541, 543 (Minn.1996). An accused " 'is entitled to a fair trial, and it is the duty of the court, and of prosecuting counsel as well, to see that he gets one.' " *State v. Litzau,* 650 N.W.2d 177, 185 n. 6 (Minn.2002) (quoting *State v. Haney,* 222 Minn. 124, 125, 23 N.W.2d 369, 370 (1946)). Here, the record reflects that the court and prosecuting attorney treated Clark with complete respect, provided him with assistance, and fulfilled their duty to see that he had a fair trial. The denial of advisory counsel was not reversible error.

### III.

Finally, we consider Clark's argument that the trial court erred when it denied his request to relinquish self-representation. We have stated that, once a defendant waives his right to counsel, the defendant does not have an absolute right to relinquish the right of self-representation. *Richards,* 552 N.W.2d at 206. Rather, a defendant will only be permitted to relinquish self-representation if the request is timely, reasonable, and reflects extraordinary circumstances. *Id.* The decision to grant a defendant's request to relinquish self-representation is within the trial court's discretion and, in exercising its discretion, a trial court balances the request "against the progress of the trial to date, the readiness of standby counsel to proceed, and the possible disruption of the proceedings." *Id.* at 206–07. Here, the request was made on the third day of a three-day trial. As the trial court correctly noted, jeopardy had attached, the state was nearing the conclusion of its case-in-chief, and reappointment of counsel would have necessitated a continuance. Under these circumstances, the denial of the request to relinquish self-representation was not an abuse of discretion.

Affirmed.

MEYER, Justice (concurring).

I write separately because I do not agree with the majority that Clark did not raise substantial complaints about the effectiveness of the representation provided by appointed counsel. I agree with the dissent of Justice Hanson that "Clark's claims that counsel had not visited him in jail, had not discussed the case with him, would not seek out suggested witnesses, and would not have the gun checked for fingerprints, raised serious questions that required inquiry." These claims amounted to "exceptional circumstances" such that the trial court should have conducted a more "searching inquiry" before ruling on the request. The court apparently did not make that inquiry because it was under the mistaken belief that the rules precluded appointment of a different public defender. I believe that the lack of inquiry precludes a finding that Clark's waiver of his Sixth Amendment right to counsel was voluntarily made.

Nevertheless, because I conclude that Clark's request for substitute counsel was untimely under the *Worthy* decision, the denial of his request was not an abuse of discretion. *State v. Worthy,* 583 N.W.2d 270, 278–79 (Minn.1998).

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent. I do so because I disagree with the majority's conclusion that the district court did not commit reversible error when it failed to exercise its discretion regarding the appointment of advisory counsel. Minnesota Rule of Criminal Procedure 5.02, subd. 2, states

that the "court may appoint 'advisory counsel' to assist the accused who voluntarily and intelligently waives the right to counsel." Here, the district court mistakenly believed it could not appoint advisory counsel, and therefore appellant, Clay Carl Clark, did not have the benefit of the court properly exercising its discretion.

While I agree with the majority's holding that there is no constitutional right to advisory counsel, the importance of such counsel should not be discounted. The majority fashions a very narrow role for advisory counsel, citing *State v. Richards* for the proposition that advisory counsel's responsibilities are " 'to steer a defendant through the basic procedures of trial' and 'to relieve the judge of the need to explain and enforce basic rules of [the] courtroom.' " 552 N.W.2d 197, 206 (Minn.1996) (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)). But the context in which the issue of advisory counsel's role arose in *Richards* was much different than in Clark's case. In *Richards*, the pro se defendant had the benefit of advisory counsel, and the issue was whether the defendant could step aside to have his advisory counsel proceed in his place. *Id.* at 205. In such circumstances, we were construing the already-appointed advisory counsel's role narrowly in order to emphasize that advisory counsel " 'should not be allowed to destroy the jury's perception that the defendant is representing himself.' " *Id.* at 206 (quoting *McKaskle*, 465 U.S. at 184, 104 S.Ct. 944).

The role of advisory counsel need not be as narrow as the majority suggests. In *Richards*, we cited the United States Supreme Court's discussion of advisory counsel in *McKaskle*. The issue considered in *McKaskle* was the role of advisory counsel when the district court appointed such counsel for a pro se defendant, who object-

ed to the presence of any advisory counsel. 465 U.S. at 170–71, 104 S.Ct. 944. In *McKaskle*, the Supreme Court articulated the *minimal* role of advisory counsel—to help the pro se defendant with the basic mechanics of courtroom procedures. *Id.* at 184, 104 S.Ct. 944. In contrast, Clark affirmatively requested that the district court provide him with the assistance of advisory counsel. If advisory counsel had been appointed, it may be that Clark would have utilized such counsel to a far greater extent than the minimal role the Court envisioned for a pro se defendant who did not want help in the first instance. Importantly, neither the Supreme Court nor our court has held that advisory counsel is *limited* to helping the pro se defendant with procedural issues.

With this more expansive view of advisory counsel in mind, I turn to the fact that the district court violated Minn. R.Crim. P. 5.02, subd. 2. This rule gives the court discretion in appointing advisory counsel upon the defendant's request. At trial, the court mistakenly informed him that the "rules have now changed. There is no stand-by counsel." Thus, the court committed error by not contemplating the exercise of its discretion to appoint advisory counsel. Yet, the majority concludes that "Clark has not made a showing that lack of advisory counsel resulted in prejudice to him." I do not reach the same conclusion, as I believe it is too difficult, if not impossible, to measure the impact advisory counsel may have had on Clark's trial. I do not believe that we can say with any fair degree of certainty that if Clark had been granted his request for advisory counsel, it would not have led to additional witnesses, better arguments, and perhaps even a different outcome. I agree with the California Supreme Court when it reversed a trial court that failed to exercise its discretion because it "[m]istakenly believ[ed] it had no authority to appoint advi-

sory counsel." *People v. Bigelow*, 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994, 1000 (1984). The California court reversed and granted a new trial because of the "impossibility of assessing the effect of the absence of counsel upon the presentation of the case." *Id.*, 209 Cal.Rptr. 328, 691 P.2d at 1001. For this same reason, the court in Clark's case must at least consider the effect of granting advisory counsel, as the rules of criminal procedure dictate.

Finally, while I do not conclude that a district court's failure to exercise its discretion regarding the appointment of advisory counsel should result in per se reversal, I nevertheless conclude that the circumstances in Clark's case do require reversal. Therefore, I would hold the court's error was prejudicial and warrants granting a new trial.

HANSON, J. (dissenting).

I join the dissent of Justice Paul H. Anderson but write separately to state additional grounds for dissent.

On the issue of the district court's denial of Clark's request for substitute counsel, I would structure the analysis differently than the majority opinion. First, because Clark's request was not made until after the *Rasmussen* hearing had been completed and jury selection had commenced, Clark's right to defend himself was not "unqualified," but was " 'subject to the trial court's discretion which requires a balancing of the defendant's legitimate interests in representing himself and the potential disruption and possible delay of proceedings already in progress.' " *State v. Christian*, 657 N.W.2d 186, 191 (Minn. 2003) (quoting *United States v. Wesley*, 798 F.2d 1155, 1155–56 (8th Cir.1986)). In *Christian* we held that when a self-representation motion is made after jury voir dire begins, the district court must exer-

cise its discretion and we affirmed the district court's denial of such a motion. *Id.* at 193–94.

Here, the district court did not exercise that discretion but simply proceeded to secure Clark's waiver of his right to counsel. Of course, it could be said that Clark can hardly complain about the district court's grant of his own motion. But, because the court's discretion to deny a request for self-representation requires the court to consider the defendant's interest, I would conclude that a defendant who makes such a motion, against the advice of or without the support of his appointed counsel, has not waived the requirement that the district court exercise discretion.

More important, even if the district court does not consider the possibility of denying the motion for self-representation, the court is obliged to assure that the defendant's waiver of counsel is knowing, voluntary, and intelligent. *State v. Worthy*, 583 N.W.2d 270, 276 (Minn.1998); Minn. R. Crim P. 5.02, subd. 1(4). And, where a defendant seeks substitute counsel on the basis of a claim that his present counsel is ineffective, a defendant's waiver of counsel may not be voluntary where the court narrows the defendant's options to either self-representation or proceeding with his present counsel. *See, e.g., Pazden v. Maurer*, 424 F.3d 303, 313 (3d Cir.2005); *Gilbert v. Lockhart*, 930 F.2d 1356, 1360 (8th Cir.1991) (holding that a defendant's waiver was invalid where he was required to choose between proceeding with unprepared counsel or no counsel). At the very least, the court was required to make a searching inquiry of Clark's reasons for wanting to dismiss his present counsel. On their face, Clark's claims that counsel had not visited him in jail, had not discussed the case with him, would not seek out suggested witnesses, and would not have the gun checked for

fingerprints, raised serious questions that required inquiry. *See, e.g., United States v. Morrissey,* 461 F.2d 666, 669 (2d Cir. 1972) (holding that a defendant's claim that his attorney did not meet with him or seek out witnesses required a searching inquiry before denying the request for new counsel).

The majority suggests that Clark's claims do not constitute "serious allegations of inadequate representation." But, to reach that conclusion, the majority must speculate because no inquiry was made on the record. In the end, the majority relies on the district court's apparent conclusion, without record basis, that "appointed counsel had conducted a proper investigation, was thoroughly prepared for trial, and had, in fact, maintained contact with Clark." Because the district court did not devise a procedure to inquire of appointed counsel about Clark's claims,[1] the court had no basis to know what investigation had been conducted or what contact had been maintained. The court's only basis for knowledge was the performance of counsel in the *Rasmussen* hearing and voir dire, and perhaps the court's familiarity with counsel in other cases, but neither of these would provide information about the nature and extent of counsel's investigation or communication with Clark.

I would conclude that the district court abused its discretion by not making a searching inquiry into Clark's claims; by narrowing Clark's choices to only self-representation or representation by current counsel; and by granting Clark's motion for self-representation without balancing all interests, including the interests of Clark in the effective assistance of counsel.

On the issue of the district court's denial of Clark's request for advisory counsel, I conclude that the harmless error analysis

must not focus on the strength of the state's case, which was not known to the court when the motion was made and which, even at the close of trial, only reflects a record that was created without the assistance of defense counsel. The analysis should focus, instead, on whether Clark was effective in his attempts at self-representation. My review of the record reveals that, as could be expected, Clark was repeatedly stymied by his lack of expertise in trial procedure. He could not assess the significance of evidence presented by the state, present proper objections to the state's evidence, develop meaningful cross-examination of the state's witnesses, or secure and present evidence of his own.

Accordingly, I would reverse Clark's conviction and grant a new trial.

---

1. *See, e.g., State v. Eling,* 355 N.W.2d 286, 294–95 (Minn.1984).