Demetrius Devell DOBBINS,
Sr., Appellant,

v.

STATE of Minnesota, Respondent.

No. A12–0678.

Supreme Court of Minnesota.

Oct. 2, 2013.

Rehearing Denied Nov. 19, 2013.

Demetrius Devell Dobbins, Sr., Rush City, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Anthony C. Palumbo, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, Minnesota, for respondent.

## OPINION

STRAS, Justice.

Following a jury trial, the district court convicted appellant Demetrius Devell Dobbins, Sr., of the first-degree premeditated murder of Quintin Roderick Lavender. *See* Minn.Stat. § 609.185(a)(1) (2012). We affirmed Dobbins's conviction on direct appeal. *State v. Dobbins* (*Dobbins I* ), 725 N.W.2d 492 (Minn.2006). Dobbins later filed a petition for postconviction relief. The postconviction court summarily denied Dobbins's petition, but we reversed and remanded to the postconviction court for an evidentiary hearing on Dobbins's false-testimony claim. *Dobbins v. State* (*Dobbins II* ), 788 N.W.2d 719 (Minn.2010). Following a hearing, the postconviction court again denied Dobbins's petition. On appeal, Dobbins asserts that the postconviction court abused its discretion when it denied his petition. We affirm.

### I.

On December 5, 2003, the Minneapolis police received a telephone call about a homicide at a home in Columbia Heights. The police later saw two men—Dobbins and Myshohn King—approach the home. Dobbins and King matched the caller's description of the men who had allegedly perpetrated the homicide. The police arrested the two men and searched the home. The police discovered Lavender's body in a storage shed in the backyard.

At Dobbins's trial, the evidence established the following facts. Dobbins had supplied Lavender with nine bags of marijuana. Lavender had sold the marijuana, but never paid Dobbins his share of the proceeds. On the day of the murder, Dobbins confronted Lavender about the out-

standing debt. Lavender promised to pay Dobbins that day. King, Dobbins, and Lavender then took a bus to Dobbins's home in Columbia Heights. Shortly thereafter, Andre Coleman, who was wearing gloves and carrying a gun, arrived at the home. King testified that, after Coleman arrived, Dobbins and Coleman went into a bedroom together. Before long, Dobbins returned to the living room "with the gloves on" and "shot [Lavender] twice."

The jury found Dobbins guilty of first-degree premeditated murder. The district court convicted Dobbins of that offense and sentenced him to life in prison with the possibility of supervised release after 30 years. We affirmed Dobbins's conviction on direct appeal, *Dobbins I*, 725 N.W.2d at 513, and the Supreme Court of the United States denied Dobbins's petition for a writ of certiorari, *Dobbins v. Minnesota*, 551 U.S. 1153, 127 S.Ct. 3021, 168 L.Ed.2d 741 (2007).

Less than 2 years later, Dobbins filed a petition for postconviction relief, which alleged, among other things, that King had testified falsely at Dobbins's trial. To support the petition, Dobbins submitted an affidavit from D.H., who had been incarcerated with King. In the affidavit, D.H. said that King had confessed to murdering Lavender. D.H. also said that King had explained that he had blamed the murder on Dobbins to receive a reduced sentence. The postconviction court denied Dobbins's petition without an evidentiary hearing.

■ We reversed and remanded for an evidentiary hearing on Dobbins's false-testimony claim. *Dobbins II*, 788 N.W.2d at 737. We concluded that Dobbins was entitled to an evidentiary hearing because his petition alleged facts that, if proven, would entitle him to a new trial under the *Larrison* test. *Dobbins II*, 788 N.W.2d at 734–37. Under the *Larrison* test, a petitioner

is entitled to a new trial based on false trial testimony if:

> "(a) The court is reasonably well satisfied that the testimony given by a material witness is false.
>
> "(b) ... [W]ithout [the testimony] the jury *might* have reached a different conclusion.
>
> "(c) ... [T]he party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

*State v. Caldwell*, 322 N.W.2d 574, 585 (Minn.1982) (quoting *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928)). The first two prongs of the *Larrison* test are compulsory. *Ferguson v. State*, 779 N.W.2d 555, 559 (Minn.2010). The third prong is relevant but is not an "absolute condition precedent" to granting relief. *Id.*

Under the first prong of the *Larrison* test, we observed that if "King confessed to [D.H.], a court would be reasonably well-satisfied that King's testimony that Dobbins shot Lavender [was] false." *Dobbins II*, 788 N.W.2d at 735. With respect to the second prong, we concluded that "the jury might have reached a different conclusion had King's alleged false testimony not been admitted." *Id.* at 736 (internal quotation marks omitted). Accordingly, we held that the postconviction court "abused its discretion when it found that Dobbins [was] not entitled to an evidentiary hearing regarding his claim of false testimony." *Id.* at 737.

On remand, the postconviction court held an evidentiary hearing. At the hearing, the court deemed King an unavailable witness because he could not be located. D.H. and another inmate, S.R., testified at the hearing. The State objected to the testimony of both witnesses, arguing that it was hearsay and lacked the requisite

indicia of trustworthiness to satisfy the statement-against-interest exception to the hearsay rule. *See* Minn. R. Evid. 804(b)(3). The court reserved its ruling on the State's hearsay objection until after the evidentiary hearing.

D.H.'s testimony was generally consistent with the statements in his affidavit. He testified that King said that he "killed somebody and that he blamed it on his codefendant." According to D.H., King also said that "[h]e wanted to scare the dude into making him pay the money [to Dobbins] or whatever by pulling the gun out on him and accidentally shot the dude." Similarly, S.R. testified that King explained to him that he had struck a plea deal with the State to get less time, even though King had "accidentally shot" Lavender.

After the hearing, the postconviction court concluded that King's out-of-court statements to D.H. and S.R. were inadmissible hearsay because they were not corroborated by circumstances clearly indicating trustworthiness. Alternatively, the postconviction court concluded that, even if King's statements were admissible under the statement-against-interest exception to the hearsay rule, Dobbins's evidence failed to satisfy the first and second prongs of the *Larrison* test. Accordingly, the postconviction court denied Dobbins's petition for postconviction relief.

## II.

■ The first question presented by this case is whether the postconviction court abused its discretion when it concluded that King's out-of-court statements to D.H. and S.R. were inadmissible hearsay. We review a postconviction court's decision to admit or exclude evidence for

an abuse of discretion, *see State v. Hooper,* 620 N.W.2d 31, 38 (Minn.2000), and we review the postconviction court's findings to determine if they are supported by sufficient evidence, *Ferguson,* 779 N.W.2d at 559.

■ Under the Minnesota Rules of Evidence, an out-of-court statement made by a nonparty and offered to prove the truth of the matter asserted is usually inadmissible hearsay. Minn. R. Evid. 801(c), (d), 802. However, Minnesota Rule of Evidence 804(b)(3) provides an exception to the general rule of inadmissibility for hearsay for

[a] statement [by an unavailable declarant] which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

In addition, a statement "tending to expose the declarant to criminal liability and offered to exculpate the accused" is inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." Minn. R. Evid. 804(b)(3). Under Rule 804(b)(3), therefore, a statement against penal interest offered to exculpate the accused is admissible only if: (1) the declarant is unavailable; (2) the statement so far tended to expose the declarant to criminal liability that a reasonable person would not have made it without believing it to be true; and (3) corroborating circumstances clearly indicate the statement's trustworthiness.[1] *Ferguson v. State,* 826 N.W.2d 808, 813 (Minn.2013).

---

1. When a statement against penal interest is offered to inculpate the accused, then its trustworthiness need not be clearly indicated by corroborating circumstances, *see* Minn. R.

Dobbins challenges the postconviction court's decision to exclude King's out-of-court statements to D.H. and S.R. as inadmissible hearsay. The court excluded the statements because "the record contain[ed] few corroborating circumstances, and those that d[id] exist d[id] not clearly indicate the trustworthiness of King's out-of-court statement[s]." Dobbins does not deny that King's out-of-court statements to D.H. and S.R. were hearsay. Rather, he asserts that the statements have the requisite indicia of trustworthiness to be admissible under Rule 804(b)(3) as statements against King's penal interest.

■ In *Ferguson v. State*, we identified six factors that courts may consider when determining whether a statement against a declarant's penal interest is sufficiently trustworthy to be admissible.[2] 826 N.W.2d at 813–14. The factors are:

(1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement.

*Id.* at 813. We emphasized that "[t]he trustworthiness of a hearsay statement under Rule 804(b)(3) depends on the totality of the circumstances, and the relevance of

each of the six factors will vary depending on the facts of each case." *Id.* at 814.

With respect to the first *Ferguson* factor, the postconviction court accurately observed that the evidence from Dobbins's trial largely contradicted, rather than corroborated, King's out-of-court statements. Although it is true that King's statements arguably found corroboration in the testimony of a forensic analyst who could not categorically exclude King as the shooter based on gunshot-residue analysis, the weight of the evidence from trial contradicted King's statements. More specifically, King's statements were directly at odds with the trial testimony of S.E. and T.S., both of whom testified that Dobbins admitted to them that he shot Lavender. King's statements were also in tension with the presence of Lavender's blood on Dobbins's clothing and the testimony that Dobbins instructed Coleman to bring a gun to the home in Columbia Heights. On balance, therefore, the first *Ferguson* factor did not weigh in favor of the admissibility of King's out-of-court statements.

The second *Ferguson* factor—whether King's out-of-court statements were consistent with his prior statements and testimony—also supported the postconviction court's evidentiary ruling. At trial, King stated categorically that "Demetrius shot [Lavender].... I saw it.... [H]e looked at me and he just looked away and just put out the gun and shot [Lavender] twice." In fact, when questioned by Dobbins's counsel at trial, King specifically denied shooting Lavender. On redirect examination, King again denied shooting Lavender:

Evid. 804(b)(3), but its admission must be consistent with the requirements of the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See, e.g., State v. Tovar*, 605 N.W.2d 717, 723 (Minn.2000).

**2.** We note that the postconviction court issued its order denying Dobbins's petition for postconviction relief before we decided *Ferguson*.

Nonetheless, many of the court's findings are consistent with the *Ferguson* factors and permit us to conduct a meaningful review of the court's evidentiary ruling. We therefore review the court's decision under *Ferguson*, even though the court did not have the benefit of *Ferguson* when it made its decision.

Q: What was going on in your life that day that would have led you to shoot somebody?

A: I didn't shoot anyone, sir.

Q: Just for fun?

A: I didn't do it.

Q: Did you shoot him just to be cool?

A: I didn't shoot 'em.

Q: Did you shoot him because you wanted Demetrius Dobbins to think you were a tough guy?

A: I didn't shoot 'em.

Q: Did you shoot him because someone was making you scared or threatening you?

A: I didn't shoot 'em.

Q: Why did you shoot him?

A: I didn't.

Therefore, the second *Ferguson* factor weighed against admission of King's out-of-court statements because the statements were inconsistent with King's trial testimony.

In addition, King had reason to fabricate his statements to D.H. and S.R., which is the focus of *Ferguson's* fourth factor. At the evidentiary hearing, the State offered the testimony of Detective Dan Douglas, who interviewed D.H. before the evidentiary hearing. Detective Douglas testified that D.H. told him "snitches" are not "well liked in prison," and that King's "health and welfare could be put at risk" because King testified against Dobbins at trial. According to Detective Douglas, D.H. had informed King that he could protect King in prison "as long as . . . King would do the right thing"—that is, assist Dobbins by recanting his trial testimony. Thus, King had a motive to lie about his role in the shooting; D.H. had offered to protect King in exchange for King's recantation of his trial testimony.[3]

■ Dobbins asserts that the postconviction court abused its discretion because it focused on the credibility of D.H. and S.R., rather than the reliability of King's statements, as the basis for its decision to exclude King's out-of-court statements as hearsay. We agree with Dobbins that the focus of the Rule 804(b)(3) inquiry is on the reliability of the declarant's out-of-court statement, not the credibility of the witnesses who recount the statement. *See United States v. Atkins,* 558 F.2d 133, 135 (3d Cir.1977) ("Rule 804(b)(3) directs the court to the trustworthiness of the *declarant,* not the witness." (emphasis added)); *see also United States v. Katsougrakis,* 715 F.2d 769, 777 (2d Cir.1983) (explaining that "[w]hile the hearsay declarant is, and necessarily must be, unavailable to testify, the in-court witness takes the stand and is subject to cross-examination"). Indeed, it is the exclusive focus on the reliability of the declarant's statements, rather than the credibility of the in-court witnesses, that distinguishes the Rule 804(b)(3) analysis from the analysis conducted under the first prong of the *Larrison* test, which addresses more generally whether the court is reasonably well-satisfied that a recanting witness's trial testimony was false. *Compare Ferguson,* 826 N.W.2d at 813 (articulating the six factors to evaluate the trustworthiness of a statement against penal interest, all of which focus on the reliability of the declarant and the declarant's statements), *with State v. Ferguson,* 742 N.W.2d 651, 660 (Minn.2007) (concluding that an unnotarized affidavit of an investigator reporting a witness's recantation did not have sufficient indicia of trustworthiness under the *Larrison* test to warrant

3. The postconviction court's findings do not cover the third, fifth, or sixth *Ferguson* factors. Our review of those factors indicates that they were neutral, were not applicable, or did not weigh in favor of the admissibility of King's out-of-court statements.

an evidentiary hearing). In accordance with Rule 804(b)(3)'s emphasis, the *Ferguson* factors specifically examine the circumstances related to the declarant's out-of-court statement. *See Ferguson,* 826 N.W.2d at 813.

Although we agree with Dobbins's description of the Rule 804(b)(3) inquiry, we disagree with Dobbins's characterization of the postconviction court's findings. While some of the court's analysis overlapped with its assessment of the credibility of D.H. and S.R., the court also expressly concluded that King's out-of-court statements lacked sufficient corroborating circumstances to clearly indicate their trustworthiness. Even if we limit our consideration to only those aspects of the court's order that bear on King's reliability and the reliability of King's statements to D.H. and S.R., as we do above, the court's evidentiary ruling finds sufficient support in the record. We therefore conclude that the court did not abuse its discretion when it determined that King's out-of-court statements constituted inadmissible hearsay. We further conclude that, because Dobbins did not present any admissible evidence of King's recantation, the court did not abuse its discretion when it denied Dobbins's witness-recantation claim.[4]

## III.

The second question presented by this case is whether the postconviction court abused its discretion when it denied Dobbins's request for the appointment of advisory counsel to assist him at his postconviction evidentiary hearing.

Minnesota Rule of Criminal Procedure 5.04, subdivision 2, governs the appointment of advisory counsel in criminal proceedings. Under the rule, a court *"may* appoint advisory counsel to assist a defendant who voluntarily and intelligently waives *the right to counsel." Id.* (emphasis added). For two reasons, the postconviction court did not abuse its discretion when it declined to appoint advisory counsel under Rule 5.04, subdivision 2. First, the rule allows for the appointment of advisory counsel only when a person has an underlying right to counsel that has been waived. *See id.* Here, Dobbins lacked a right to counsel. Neither the United States Constitution nor the Minnesota Constitution provided Dobbins with a right to counsel because he already had a counseled direct appeal. *See Ferguson,* 826 N.W.2d at 816; *see also State v. Clark,* 722 N.W.2d 460, 466 (Minn.2006) (holding that the Minnesota Constitution does not guarantee advisory counsel for pro se defendants). Nor has Dobbins identified any other statute or rule that provides him with a right to counsel. Second, even if Dobbins had a right to counsel, the appointment of advisory counsel under Rule 5.04, subdivision 2, is permissive, not mandatory. *See Clark,* 722 N.W.2d at 467 (noting discretionary nature of Rule 5.04, subdivision 2). Other than making a bare assertion that he was entitled to the assistance of counsel at the evidentiary hearing, Dobbins has not demonstrated that the postconviction court's decision undermined the fairness of his evidentiary hearing. *Cf. id.* at 468–69 (upholding the trial court's decision not to appoint advisory counsel after concluding the defendant was not prejudiced and received a fair trial). For these reasons, we conclude that the postconviction court did not abuse its discre-

---

4. Because we conclude that the postconviction court's evidentiary ruling did not constitute an abuse of discretion, we need not address whether King's out-of-court statements, if admissible, would warrant a new trial under the *Larrison* test. *See Ferguson,* 826 N.W.2d at 815 n. 3.

tion when it denied Dobbins's request for advisory counsel under Rule 5.04, subdivision 2.

■ In the alternative, Dobbins argues that we should invoke our supervisory authority to require the appointment of advisory counsel for pro se litigants in postconviction proceedings to ensure "fundamental fairness in all stages of the legal process." In those instances in which we have exercised our supervisory authority, we have done so to ensure that district courts and parties follow the applicable rules of evidence and procedure. *See, e.g., In re Child of B.J.–M. and H.W.*, 744 N.W.2d 669, 673 (Minn.2008) (applying our supervisory authority "to enforce the Rules of Juvenile Protection Procedure"); *State v. Kaiser*, 486 N.W.2d 384, 385–86 (Minn.1992) (exercising our supervisory authority to protect evidentiary rules from erosion). Here, however, Dobbins asks us to do the opposite: to exercise our supervisory authority to create a prophylactic requirement that does not conform to an applicable rule of procedure. We decline to exercise our supervisory authority in such a manner, particularly when Dobbins's proposed approach would require us to impose a categorical requirement on a matter committed by rule to the discretion of the trial court.

## IV.

■ The final question presented by this case is whether the postconviction court abused its discretion when it denied Dobbins's motion to expand the scope of the evidentiary hearing. Following remand from this court, Dobbins filed a motion in which he asked the postconviction court to evaluate his evidence under the test from *Rainer v. State*, 566 N.W.2d 692 (Minn.1997), which applies to claims of newly discovered evidence. The postconviction court denied the motion and evaluated Dobbins's evidence only under the *Larrison* test.

■ Though trial courts generally have "broad discretion to determine how to proceed on remand," they cannot act in a way that is "inconsistent with the remand instructions provided." *Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn.2005). Our remand instructions in *Dobbins II* were limited: we ordered the postconviction court to "hold an evidentiary hearing to address whether Dobbins is entitled to postconviction relief *on the basis of his false testimony allegation.*" 788 N.W.2d at 737 (emphasis added). In doing so, we noted that Dobbins failed to argue that the "newly discovered evidence test from *Rainer*" should apply to his evidence, even though the D.H. affidavit also contained "exculpatory evidence" tending to show that King, not Dobbins, shot Lavender. *Id.* at 733 n. 4. In light of both Dobbins's failure to timely argue that the *Rainer* standard applies and the postconviction court's decision to follow our remand instructions strictly, the court did not abuse its discretion when it refused to expand the scope of the evidentiary hearing on remand.

## V.

For the foregoing reasons, we hold that the postconviction court did not abuse its discretion when it denied Dobbins's petition for postconviction relief.

Affirmed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.