STATE of Minnesota, Respondent,

v.

Don JONES, Appellant.

No. A07–1168.

Court of Appeals of Minnesota.

Sept. 2, 2008.

Lori Swanson, Attorney General, St. Paul, MN and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Jodie L. Carlson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges his convictions of check forgery, offering a forged check, and theft by swindle, arguing that his right to counsel was denied because the district court (1) improperly denied his request for a public defender; (2) failed to obtain a valid waiver of his right to counsel; and (3) erred in refusing to appoint standby counsel. In addition, appellant asserts that he is entitled to a new trial because of prosecutorial misconduct. We affirm.

## FACTS

### Facts Presented at Trial

Appellant Don Jones deposited a check in the amount of $3,600 at Guaranty Bank on January 9, 2006, and received a $2,700 cashier's check in return. The check that appellant deposited was written on the business account of Shanndyn's Towing and Recovery, owned by appellant and his girlfriend, S.D. The branch manager of the bank testified that appellant said that it was a payroll check made payable to him, signed by S.D.'s mother, V.D., and endorsed by appellant. According to V.D.'s testimony, she was never an authorized signer on the account and did not sign this check.

The branch manager gave appellant a $2,700 cashier's check and the bank's records show that appellant took the check to Shakopee Dodge, which subsequently cashed it. Of the remaining $900 initially deposited by appellant, $300 was withdrawn in cash and the other $600 was put in his personal account. Two days later, the branch manager discovered that the business account was closed; she called appellant, who told her that he would come to the bank to repay the money in the next few days. Despite attempts by the branch manager to contact appellant again, he never repaid the bank.

At the time of this incident, Department of Corrections Officer Angel Uribe was appellant's probation officer as a result of a prior conviction. According to Officer Uribe's testimony, S.D. came to her office, and because S.D. felt that appellant's probation officer should know it, informed the officer that appellant was writing checks on V.D.'s account, forging V.D.'s signature. Detective Laura Kvasnicka, the investigating officer, testified that, after speaking with Officer Uribe, S.D. told her that appellant used checks from a closed account to purchase a vehicle. In the course of her investigation, Detective Kvasnicka discovered that appellant had also signed S.D.'s name to a cashier's check used at a Super America. According to Detective Kvasnicka, V.D. and S.D. both told her that neither of these checks was properly signed, and S.D. stated that the business account was closed in 2005. Detective Kvasnicka recorded S.D.'s statements and testified that her recollection of the conversation was consistent with that recorded conversation before it was played in its entirety for the jury.

Both the state and appellant called S.D. to testify. The state asked her to corroborate the statements made by V.D., Detective Kvasnicka, and Officer Uribe, but S.D. claimed that they were not being honest about what she told them. When asked if the check that appellant was accused of forging was written on a closed account, she asserted her Fifth Amendment rights, and the state ended its questioning. In response to appellant's questions, S.D. stated that she had never told anyone that appellant forged the checks and testified that Detective Kvasnicka was the person "who told me [about appellant forging the check] so I was just telling them what I knew from her." She stated that she told

Officer Uribe what she heard from Detective Kvasnicka only to "get [her] daughter back" by getting appellant in trouble. Appellant did not testify.

**Procedural History**

After being charged, appellant appeared in district court at his bail hearing on February 27, 2006, without an attorney. Bail was set at $30,000, and appellant posted bail. Appellant appeared in district court again on March 3, 2006, still unrepresented. He advised the district court that he was "going to get a private attorney" and stated that a continuance until May would give him sufficient time to find private counsel. The district court objected to that delay and scheduled the next court appearance for April 10, 2006. Appellant missed the April 10 court date but turned himself in and appeared on April 13. The district court scheduled another hearing for May 5, 2006, and released appellant on his own recognizance.

Appellant was again unrepresented by counsel in district court on May 5, 2006. The district court asked appellant if he wanted a continuance to seek a private attorney because his application for a public defender had been denied twice. Informing appellant that his "charges [were] pretty significant," the district court suggested that appellant hire a private attorney and provided him with a list of reduced-cost attorneys. Appellant responded that he could "hire one myself in probably about a month. I am probably going to have to sell my truck to pay for any—that was probably the reason why I was denied the first time, because of my truck." The district court granted appellant's request and continued the hearing until June 9, 2006.

On June 9, appellant appeared a fifth time without counsel and told the district court that his applications for a public defender were denied and that he could not afford a private attorney. The district court provided appellant with a copy of the complaint and scheduled appellant's omnibus hearing for September 8, 2006. At the omnibus hearing, appellant had still not retained private counsel and told the district court that, although he was unemployed during his prior appearances, he was getting "a little stable" and could contact the reduced-fee attorneys. The district court scheduled appellant's trial for January 16, 2007, in an effort to give appellant enough time to hire a private attorney.

Despite the extension, appellant appeared without counsel on January 16 and voiced his objection to proceeding without an attorney. He stated that he felt like a "sitting duck" because he had no idea what to object to, what questions to ask, or how to proceed at trial. On the record, the district court acknowledged appellant's right to an attorney, but noted that appellant had been repeatedly advised to hire an attorney and told the district court at each continuance that he would do so. Because appellant failed to "follow through on [his] commitment to go out and get an attorney," the district court indicated that it was not compelled to continue the case again. Appellant informed the district court that he had an ongoing criminal case in Dakota County where he was represented by a private attorney. In response to this information, the district court called this attorney to see if he would represent appellant in the instant matter. The private attorney responded that he was willing to represent appellant, provided that appellant pay the retainer on the Scott County case.

When appellant returned to district court on February 14, 2007, he was still unrepresented, and he again objected to the denial of his application for a public defender. But the district court stated

that appellant's continued failure to provide his own attorney was justification for proceeding and informed appellant of the various procedures for trial, his right to refuse to testify, and the burden of proof necessary for a conviction. Appellant stated on the record that he was not "choosing" to represent himself, which prompted more questions by the district court about appellant's eligibility for a public defender and another application by appellant.

The district court collector examined appellant's application and determined that appellant did not meet the income requirements for a public defender because his income was more than 125% of the federal poverty guidelines. The district court then denied appellant's request for a public defender and commenced the jury trial. Following the closing arguments of the state and appellant at the end of trial, the jury returned a verdict of guilty on all charges, and judgment was entered. The district court sentenced appellant to 30 months' commitment to the commissioner of corrections for offering a forged check. This appeal follows.

## ISSUES

1. Did the district court abuse its discretion by denying appellant's request for a public defender?

2. Did appellant validly waive his right to counsel by his conduct in failing to hire private counsel?

3. Did the prosecutor commit misconduct warranting reversal of appellant's conviction?

## ANALYSIS

### I.

■ Appellant argues that the district court erred in denying his application for a public defender and asserts that this deprived him of his right to counsel. Appel-

late courts review a district court's decision to appoint a public defender for an abuse of discretion. *In re Stuart,* 646 N.W.2d 520, 523 (Minn.2002). The United States and Minnesota Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. "[C]ourts have long required appointment of counsel for criminal defendants who are financially unable to obtain counsel for their defense." *Stuart,* 646 N.W.2d at 524 (citing *Gideon v. Wainwright,* 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963)). "'[A]ny person haled into court, who is too poor to hire a lawyer, cannot be assured of a fair trial unless counsel is provided for him.'" *Id.* (alteration in original) (quoting *Gideon,* 372 U.S. at 344, 83 S.Ct. at 796).

■ But the resources of the public defender are not limitless, and so this right to appointed counsel must be protected from those who can otherwise afford their own attorney. *Id.* The Minnesota Rules of Criminal Procedure state that a defendant is "financially unable to obtain counsel" if:

(1) The defendant, or any dependent of the defendant who resides in the same household as the defendant, receives means-tested governmental benefits; or

(2) The defendant, through any combination of liquid assets and current income, would be unable to pay the reasonable costs charged by private counsel in that judicial district for a defense of the same matter.

Minn. R.Crim. P. 5.02, subd. 3. The burden of proof is on the defendant seeking a public defender to show that he is financially unable to provide his own counsel. *Stuart,* 646 N.W.2d at 526. The defendant must show that a combination of his liquid assets and current income is insufficient to pay the reasonable costs charged by pri-

vate counsel for defense of the charged crime. *Id.* at 527. When examining the defendant's assets to determine if he is unable to provide his own counsel, the district court must include:

(1) the liquidity of real estate assets, including the defendant's homestead;

(2) any assets that can be readily converted to cash or used to secure a debt;

(3) the determination of whether the transfer of an asset is voidable as a fraudulent conveyance; and

· (4) the value of all property transfers occurring on or after the date of the alleged offense. The burden is on the accused to show that he or she is financially unable to afford counsel. Defendants who fail to provide information necessary to determine eligibility shall be deemed ineligible. The court must not appoint the district public defender as advisory counsel.

Minn.Stat. § 611.17, subd. 1(b) (2006); *see also* Minn. R.Crim. P. 5.02, subd. 4. The district court, in its discretion, should also appoint a public defender to represent a person of moderate means if he or she would be subject to substantial financial hardship if forced to pay the full cost of adequate representation. Minn. R.Crim. P. 5.02 cmt. "The ability to pay part of the cost of adequate representation at any time while the charges are pending against a defendant shall not preclude the appointment of the public defender for the defendant." Minn. R.Crim. P. 5.02, subd. 5. If the district court appoints a public defender and later determines that the defendant has the ability to pay part of the costs, it may require the defendant to pay part of the costs of representation to the extent he is able. *Id.*

■ Appellant and his dependents do not receive means-tested government benefits, making him ineligible for a public defender under Minn. R.Crim. P. 5.02, subd. 3(1). Thus, only if appellant is unable to pay the reasonable cost of retaining private counsel is he entitled to a public defender. *Id.,* subd. 3(2). Appellant argues that his initial application for a public defender should have been approved, but, as noted by the district court, there were numerous inconsistencies on the application. When appellant filled out the application in May 2006, he indicated that he had no income; yet he owned a $17,000 vehicle and posted a $30,000 bond that the district court "presume[d] cost $3,000 at least to post." The application also reflected calculations in the margins totaling $2,080 in monthly income that was labeled as "[g]irlfriend's income," a car payment of $489, child-support obligations of $700–$800, and a car insurance payment of $200.[1]

Appellant argues that it was inappropriate to consider his girlfriend's income and the value of his vehicle when determining his eligibility for a public defender. But we are not persuaded that the district court's decision was based on any income from appellant's girlfriend or the liquidity of appellant's vehicle. Instead, the record reflects that the district court concluded that appellant was misrepresenting his finances. Despite his indication that he had no income, appellant's application form listed multiple expenses including car payments, car insurance, child-support obligations, and a total household monthly expense of $2,000. In denying his application and in noting the inconsistencies provided to the district court, the district

---

**1.** It is unclear from the record whether these are appellant's additions or whether they were added by the district court or an officer of the district court while speaking with appellant. But these figures were considered by the district court prior to denying appellant's request for a public defender.

court made an implicit credibility finding, rejecting appellant's representations of his income. And we are not in a position to review that credibility determination. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988). The district court's denial of appellant's initial application for a public defender was a proper exercise of its discretion.

■ Appellant argues that his second application for a public defender was also improperly denied and contends that the district court erroneously used the federal poverty guidelines as its basis for denying the request. At appellant's February 14 appearance, the district court questioned him about changes in his income and discussed his new full-time employment that paid him $15 per hour. The district court advised appellant that he could apply for a public defender if he wanted to; but the district court also indicated that if appellant was still not qualified for a public defender, the district court intended to proceed with a jury trial. Appellant completed another application, and the district court denied it on the basis of his income. Appellant's income was calculated based on the information he provided and resulted in a determination that his monthly income was $2,280. Because appellant's income, by itself, exceeded the federal poverty guidelines, the collector did not bother to consider his girlfriend's income or any other assets. In addition, the collector informed the district court that he had used appellant's pre-raise wage of $12 per hour rather than the recent increase to $15 per hour. Although the district court was not expressly authorized to use the federal poverty guidelines, its use here is not prohibited, and it demonstrates that the district court considered the necessary financial factors in a proper exercise of its discretion.

Appellant's bare assertion that he was unable to pay for an attorney is insufficient to meet his burden to demonstrate an inability to afford private counsel, particularly in light of his reported income. *Stuart,* 646 N.W.2d at 526–27. The district court demonstrated sufficient consideration of appellant's particular financial situation and made the appropriate conclusions about the lack of hardship for appellant. *Cf. State v. Ferris,* 540 N.W.2d 891, 895 (Minn.App.1995). Even assuming arguendo that the district court improperly denied appellant's first request for a public defender, the proper denial of his second request, based on his income, demonstrates that appellant suffered no prejudice because he would have been required to hire a private attorney at that point. Appellant's lack of credibility and his undisputed income resulted in the district court's proper exercise of its discretion in denying his request for a public defender.

## II.

■ Appellant argues that he did not effectively waive his right to counsel and that, without an effective waiver of that right, he is entitled to a new trial. A defendant may waive his right to counsel, but such a waiver must "be voluntary [and] must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). By statute, Minnesota law requires that when a defendant waives the right to counsel, "the waiver shall in all instances be made in writing, signed by the defendant, except that in such situation

if the defendant refuses to sign the written waiver, then the court shall make a record evidencing such refusal of counsel." Minn. Stat. § 611.19 (2006).

This court in *State v. Hawanchak*, 669 N.W.2d 912, 915 (Minn.App.2003), held that the district court violated the defendant's right to counsel by requiring him to proceed pro se without obtaining a written waiver of the right to counsel or making a record establishing a refusal of counsel. But in *Hawanchak*, the defendant's application for a public defender was not denied until the day of trial. *Id.* at 913–14. The district court denied the defendant's request for a continuance and apparently gave him no opportunity to hire private counsel. *Id.* at 914. That case is distinguishable because there was no conduct by the defendant in *Hawanchak* that could be construed as a refusal to hire private counsel.

A waiver may still be constitutionally valid, despite the absence of a signed document, if the surrounding facts and circumstances show that the defendant waived his right to counsel voluntarily, knowingly, and intelligently. *State v. Worthy*, 583 N.W.2d 270, 275–76 (Minn.1998); *see also State v. Camacho*, 561 N.W.2d 160, 173 (Minn.1997) (stating that waiver was valid where defendant's decision was "unequivocal" and "he was cognizant of the consequences of the decision"); *State v. Krejci*, 458 N.W.2d 407, 412–13 (Minn. 1990) (stating that waiver may be valid if the record shows "that [a] defendant was fully aware of the consequences of proceeding pro se"). "The defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" *Camacho*, 561 N.W.2d at 173 (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d

562 (1975)) (quotation marks omitted). But we have not yet had an opportunity to determine whether repeated failure to hire a private attorney can operate as a waiver.

The United States Supreme Court has held that a criminal defendant can forfeit fundamental trial rights such as the right to be present at trial. *See Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (affirming district court's decision to proceed with trial when criminal defendant failed to return to the courtroom following a recess); *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970) (defendant can lose the right to be present at his trial by being disruptive if, after repeated warnings regarding his conduct, defendant continues to act in a disorderly manner). Federal circuit courts have interpreted *Allen* and *Taylor* to be consistent with the concept of "waiver by conduct" of the right to counsel. *See Wilkerson v. Klem*, 412 F.3d 449, 455–56 (3d Cir.2005) (defendant forfeited right to counsel by failing to retain counsel by trial date despite ample time to do so); *United States v. Meeks*, 987 F.2d 575, 579 (9th Cir.1993) ("In limited circumstances, a court may force a defendant to proceed pro se if his conduct is dilatory and hinders the efficient administration of justice") (quotation omitted). Additionally, "the combination of ability to pay for counsel plus refusal to do so *does* waive the right to counsel at trial. It is waiver by conduct." *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir.1992).

Here, appellant's repeated failure to hire a private attorney was voluntary; and his conduct reveals a "greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial," demonstrating that his actions were knowing and intelligent. *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1067 (11th Cir.

1986).[2] We therefore agree with the reasoning in this line of cases and hold that a defendant, faced with the choice of hiring a private attorney or proceeding pro se, who repeatedly fails to hire his or her own attorney, has validly waived the right to counsel.

## III.

 Appellant argues that even if he was not denied his right to counsel, the district court erred by failing to exercise its discretion to appoint standby counsel to assist him. Appellant asserts that the lack of standby counsel prejudiced him and asks this court to reverse his conviction.

 There is no state or federal constitutional right to standby counsel. *State v. Clark,* 722 N.W.2d 460, 465–66 (Minn.2006). Minn. R.Crim. P. 5.02, subd. 2, allows a district court, in its discretion, to appoint standby counsel for an indigent criminal defendant who voluntarily, knowingly, and intelligently waives the right to counsel. *Clark,* 722 N.W.2d at 465–67; *State v. Savior,* 480 N.W.2d 693, 694 (Minn.App.1992). If a district court errs in refusing to appoint standby counsel, the conviction is not subject to per se reversal but, instead, must be analyzed on the facts of the case itself. *Clark,* 722 N.W.2d at 468.

 "The primary justifications for advisory counsel are: ensuring the fairness of the criminal justice process, promoting judicial efficiency, and preserving the appearance of judicial impartiality." *Id.* (citing Minn. R.Crim. P. 5.02 cmt; Marie Higgins Williams, *The Pro Se Defendant, Standby Counsel, and the Judge: A Proposal for Better–Defined Roles,* 71 U. Colo. L.Rev. 789, 804–06 (2000)). Al-

though Minnesota courts have a long history of encouraging the use of standby counsel to promote fairness, a criminal defendant is only entitled to a fair trial, not an error-free trial. *See State v. Zenanko,* 552 N.W.2d 541, 543 (Minn.1996); *see also State v. Jones,* 266 N.W.2d 706, 711 n. 1 (Minn.1978) (encouraging district courts to "liberally use the authority provided in" rule 5.02). When it is apparent that the district court treated the criminal defendant with respect, provided necessary assistance, and fulfilled its duty to ensure a fair trial for the defendant, any erroneous refusal to appoint advisory counsel does not constitute reversible error. *Clark,* 722 N.W.2d at 469.

 Here, the district court denied appellant's request for standby counsel because it determined that he was ineligible for a public defender. Appellant argues that this is an error that prejudiced his defense. We disagree. While we conclude that the district court properly exercised its discretion in refusing to appoint standby counsel, we note that even if it was an abuse of discretion, appellant suffered no prejudice as a result. Appellant received a fair trial and was assisted, on numerous occasions, by the district court. Appellant notes that the district court became frustrated with his questions near the end of the trial and contends that this is evidence of prejudice. In the presence of the jury, the district court did admonish appellant's method of questioning a witness. But the district court then, sua sponte, immediately advised the jury:

> Ladies and gentlemen [of the jury], I apologize if I am getting a bit short with [appellant], but I am getting a bit short with both counsel and [appellant], and I apologize if that attitude is coming off, I

---

**2.** We also note that a criminal defendant should not be allowed to manipulate or intentionally delay the proceedings by refusing to hire private counsel. It is actions such as these that demonstrate an understanding of the proceedings and risks of a criminal trial.

don't mean it to reflect on him and the merits of his case. He is not real familiar with the law, I understand that and allowed a lot of latitude, but I am getting really exasperated at the questions, they are very, very redundant.

Even if the district court's initial admonishment of appellant's actions had an effect on the jury, we presume that any possible prejudicial effect from the district court's statements was eliminated or minimized by the follow-up comment made by the district court. While not technically an instruction to the jury, the district court's statements can be reasonably analogized to a curative jury instruction. And without evidence to the contrary, Minnesota case law presumes that a jury follows a district court's instructions. *See State v. Taylor,* 650 N.W.2d 190, 207 (Minn.2002) (stating that on review we presume that the jury followed the district court's instructions). Because we conclude that the district court's comments did not affect the fairness of the proceedings, appellant's argument that the district court "could have appointed" standby counsel does not established an abuse of discretion.

### IV.

Appellant argues that the prosecutor committed misconduct during the trial that warrants reversal of his conviction and that the district court's failure to appoint standby counsel enhanced the effect of the misconduct. Because we have concluded that the district court properly exercised its discretion in refusing to appoint standby counsel, we review the complained-of conduct by the prosecutor for reversible error.

▆▆▆▆ Appellant did not object to the alleged error at trial. We therefore utilize the plain-error standard on review. *State v. Ramey,* 721 N.W.2d 294, 299 (Minn. 2006). An appellant claiming plain error

must demonstrate that an error occurred that was clear or obvious. *Id.* at 302. If an appellant can demonstrate such an error, the burden shifts to the state to demonstrate that the error lacked prejudicial effect. *Id.* If the state cannot show a lack of prejudice, a court should reverse the conviction when the error affects the fairness and integrity of the judicial proceedings. *State v. Dobbins,* 725 N.W.2d 492, 508 (Minn.2006).

### Hearsay Evidence

▆▆▆▆ Appellant asserts that the prosecutor committed prejudicial misconduct by introducing improper hearsay evidence. Cross-examination questions that inform the jury of inadmissible evidence are improper. *State v. Pendleton,* 706 N.W.2d 500, 509 (Minn.2005). Here, the prosecutor elicited information from V.D., Officer Uribe, and Detective Kvasnicka concerning S.D.'s out-of-court statements before S.D. had an opportunity to testify. While acknowledging that this testimony was hearsay, the state asserts that these out-of-court statements were sufficiently trustworthy and, therefore, admissible under Minn. R. Evid. 807.

▆▆▆ Minn. R. Evid. 807 creates a general exception to the hearsay rule that would otherwise bar out-of-court statements when

> (1) there [is] no confrontation problem presented by the admission of the statement as substantive evidence because the declarant testif[ies], admit[s] making the statement, and [is] available for cross-examination; (2) there [is] no dispute that the declarant made the statement and no dispute as to what the statement contain[s]; (3) the statement [is] against the declarant's penal interest; and (4) the state introduced [ ] evidence [that] point[s] strongly toward the guilt of the accused.

*State v. Martinez*, 725 N.W.2d 733, 738 (Minn.2007) (quotation omitted) (considering prior version of Minn. R. Evid. 807, found at Minn. R. Evid. 803(24)).

▉ Because S.D. testified, there is no confrontation issue. S.D.'s statements to Detective Kvasnicka were played for the jury, and although she challenged the veracity of the statements testified to by V.D., Officer Uribe, and Detective Kvasnicka, she did so by offering an explanation of her statements, not by directly refuting that she made them. S.D. testified that the statements these witnesses attributed to her were mischaracterized and that her statements were based on what she was told by the police. In light of the audio recording of her statements and her own inability to completely deny them, we conclude there is no meaningful dispute as to the statements or their content. Admittedly, the statements were not against S.D.'s penal interests, but her statements do not have to be directly against her own penal interest because they were made against the interest of her relationship with appellant and his penal interest. *See State v. Plantin*, 682 N.W.2d 653, 659 (Minn.App.2004), *review denied* (Minn. Sept. 29, 2004). In addition, S.D.'s statements were consistent with the considerable evidence produced by the state that established that appellant signed and cashed the forged check, including the testimony of the bank manager, video and photos of appellant cashing the check, and the bank records. Because this testimony was properly elicited under Minn. R. Evid. 807, we find no error in the prosecutor's conduct.

**"Were They Lying" Questions**

▉ Appellant also contends that the prosecutor committed misconduct when he asked S.D. if V.D., Officer Uribe, and Detective Kvasnicka were all lying after S.D. denied the meaning attributed to her statements. As appellant notes, "were they lying" questions generally have no probative value and are usually improper. *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999). But an exception exists when a criminal defendant makes the issue of witness credibility a central focus of his case. *State v. Morton*, 701 N.W.2d 225, 235 (Minn.2005). Here, although the prosecutor called S.D. initially, he was aware that S.D. intended to testify in support of appellant and deny implicating appellant in the forgery. Because appellant's theory of the case was that the other witnesses were untruthful, he made credibility a central focus. Therefore, because the prosecutor was properly addressing the issue of credibility, we find no error in the question. Further, even if the prosecutor's question was plain error, the substantial evidence against appellant and the multiple opportunities that appellant had to rehabilitate S.D.'s credibility demonstrate that he suffered no prejudice as a result of any claimed error.

**Bad Character Evidence**

▉ Appellant argues that the prosecutor improperly attacked his character by asking questions that elicited information about his prior criminal acts, including an order for protection filed against him and a prior assault conviction. But the prosecutor properly elicited this information after appellant first raised the issue of his own character by asking V.D. if she felt S.D. was ever "fearful" of him or whether he was a "personal threat to any part of [her] family." Minn. R. Evid. 404(a)(1) allows a prosecutor to use character evidence when it is introduced to rebut defense evidence on the subject. Because appellant had already raised the issue of his character, it was proper for the state to rebut that evidence with this testimony concerning appellant's past acts.

### Emotional Appeal to the Jury/Denigrating the Defendant

 Appellant contends that the prosecutor committed misconduct by appealing to the jury's emotions and by denigrating his character. Specifically, appellant argues that it was misconduct for the prosecutor to ask the bank manager if her "employer like[s] forgeries" and if she "like[s] forgeries" to which the bank manager responded, "No." Later, after appellant finished his examination of S.D., the prosecutor declined to cross-examine her, stating, "I'm not going to ask any more questions of [S.D.]. I think she has been here long enough," which appellant asserts was a subtle negative commentary on the quality of appellant's questions. While appellant brings our attention to questions asked and comments made by the prosecutor that are admittedly irrelevant, they do not rise to the level of misconduct and are not improper emotional appeals. *Cf. State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995); *State v. McNeil*, 658 N.W.2d 228, 234–36 (Minn.App.2003) (stating that the prosecutor must avoid inflaming the jury's passions and prejudices against the defendant). The prosecutor's statement about the length of time that S.D. was on the stand was accurate. In fact, she was questioned at length, and both the prosecutor and appellant called her in their cases. In this context, the prosecutor's comment can reasonably be interpreted as a statement of fact and not as an attack on appellant's method of questioning. Finally, the prosecutor did comment to the bank manager that appellant "wants to talk about earrings and your husband" after appellant had asked some irrelevant questions of the bank manager. But appellant objected to the prosecutor's comment, and the district court sustained appellant's objection and ordered the statement stricken from the record. We assume that the jury followed the district court's instructions. *Taylor*, 650 N.W.2d at 207.

### DECISION

The district court properly exercised its discretion in denying appellant's request for a public defender. Appellant waived his constitutional right to counsel by his conduct through his repeated refusal to hire a private attorney despite multiple warnings that failure to hire counsel would result in proceeding pro se; his actions satisfy the constitutional requirement that waiver of the right to counsel must be made voluntarily, knowingly, and intelligently. The district court was not required to appoint standby counsel for appellant when appellant was not otherwise eligible for a public defender. Finally, we conclude that there was no misconduct by the prosecutor that warrants reversal of appellant's conviction.

**Affirmed.**