*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1176**

State of Minnesota,
Respondent,

vs.

Robert Edward Collins, Jr.,
Appellant.

**Filed July 21, 2014
Affirmed
Halbrooks, Judge**

Olmsted County District Court
File No. 55-CR-12-5669

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, Eric M. Woodford, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Smith, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

On appeal from his conviction of being an ineligible person in possession of a firearm, appellant argues that the district court erred by accepting his stipulation to an element of the offense without securing a valid waiver of his rights under Minn. R. Crim. P. 26.01, subd. 3(a). Appellant also argues that the district court abused its discretion when it admitted hearsay statements under Minn. R. Evid. 807. Because we conclude that any error in accepting appellant's stipulation was harmless and that the district court properly exercised its discretion in admitting the disputed hearsay statements, we affirm.

## FACTS

On June 3, 2012, police responded to a call that there had been a drive-by shooting near an apartment building in Rochester. Witnesses alleged that a man sitting in the front passenger seat of a green Kia had fired a handgun at a group of pedestrians. Witnesses described the man as an African-American male with shoulder-length, dreadlocked hair. D.P., a 13-year-old boy who witnessed the shooting, told police that a man named "Chewy" was driving the green Kia. D.P. told police that "Chewy's" real name is James Dortch and that "Chewy" was in the vehicle with a "[k]id named Shorty D," who had dreadlocked hair. D.P. did not know "Shorty D's" real name. Police recorded their interview with D.P. and repeatedly noted D.P.'s nervous demeanor and that he was uncooperative when speaking with them.

Weeks later, police located Dortch, and he was brought to the police station for questioning. During his 24-minute interview with police, Dortch admitted that he was

the individual driving the green Kia on the day of the drive-by shooting. He told police that "Shorty D" was the passenger in the vehicle and that "Shorty D's" real name is Robert Edward Collins, Jr., the appellant in this matter. Thereafter, police located and arrested appellant, charging him with the crime of being an ineligible person in possession of a firearm. Against the advice of counsel, appellant waived his right to a jury trial.

Before his bench trial began, appellant stipulated that he had a prior felony-level conviction making him ineligible to possess a firearm. Specifically, he admitted that he had been convicted of a third-degree controlled-substance crime and that he had received a felony-level sentence for that conviction. Appellant conferred with counsel on the matter and was advised of the state's burden of proving this element beyond a reasonable doubt. The district court also advised appellant as to the disadvantages of stipulating to this element. Nevertheless, appellant stated that he still wished to stipulate, and the district court accepted the stipulation. The parties proceeded to trial, disputing whether appellant was the man who possessed a firearm in the passenger seat of the green Kia.

At trial, the three witnesses whom police talked to immediately after the shooting testified. They testified consistently with their earlier statements to police—that the passenger in the vehicle was an African-American male who had shoulder-length, dreadlocked hair. But D.P. recanted his earlier statements to police. D.P. testified that there were two people in the green Kia, but claimed that he did not remember who was in the passenger seat. D.P. testified that he did not know appellant, had never seen him before, and had never heard of the nickname "Shorty D." D.P. stated that he could no

3

longer remember the events of that day and that his memory was "just gone." By the conclusion of his direct examination, D.P. recanted his earlier trial testimony, stating that he did not remember if there were two people in the vehicle. At a bench conference, defense counsel advised the district court that D.P. was afraid. D.P. himself said that he was "just doing what [his] parents told [him] to do."

Dortch also testified at trial. Dortch appeared in court only after he had been arrested for failing to comply with a subpoena. Dortch also recanted his earlier statements to police. Dortch admitted that he was the individual driving the green Kia. He also agreed that appellant's nickname is "Shorty D." But he claimed that appellant was not the passenger in the vehicle; rather, it was his friend Mikey. Dortch did not know Mikey's last name, despite claiming to have known him for about a year. He did not know where he had met Mikey or where Mikey lived, but he knew that Mikey had "light skin." When asked why he had told police that the passenger was "Shorty D," Dortch said it was because he felt "pressured" by police during his interview.

Because of Dortch and D.P.'s recantations, the prosecutor sought to admit into evidence both witnesses' earlier statements to police under Minn. R. Evid. 807, the "catchall" exception to the hearsay rule. The district court allowed both witnesses' prior statements into evidence, finding that both D.P. and Dortch's earlier statements were trustworthy and met the requirements of rule 807. The district court determined that D.P.'s testimony "was limited by his unwillingness to 'snitch'" and that D.P. "displayed an increasing lack of cooperation with the prosecutor's direct examination." The district court determined that D.P.'s statements to police were trustworthy because they "were

4

made and recorded very shortly after the incident, before there was any extended opportunity to fabricate, for memory to dim, or for [D.P.] to ruminate at length on the stigma or possibly dangerous consequences of 'snitching.'" The district court also found that there was "nothing in the manner or content of the [police] interrogation that cause[d] [it] to question the reliability of Dortch's identification of 'Shorty D.'"

The district court found appellant guilty of being an ineligible person in possession of a firearm. Appellant was sentenced to 60 months in prison. This appeal follows.

## D E C I S I O N

## I.

To be convicted of being an ineligible person in possession of a firearm, the state must prove that the defendant: (1) was previously convicted of a "crime of violence" and (2) possessed a firearm. Minn. Stat. § 624.713, subd. 1(2) (2012). Appellant stipulated to the first element at trial. He now argues that the district court erred by accepting his stipulation because he did not waive his rights as described in Minn. R. Crim. P. 26.01, subd. 3(a).

A defendant's right to a trial includes the right to be tried on each element of the charged offense. *State v. Bluhm*, 457 N.W.2d 256, 260 (Minn. App. 1990), *aff'd in part, rev'd in part on other grounds*, 460 N.W.2d 22 (Minn. 1990). "A defendant may agree to waive a jury determination of a particular element of the offense by stipulating to it." *State v. Hinton,* 702 N.W.2d 278, 281 (Minn. App. 2005), *review denied* (Minn. Oct. 26, 2005). To stipulate to an element of an offense, a defendant must, either orally or in writing, "acknowledge and personally waive the rights to: (1) testify at trial; (2) have the

5

prosecution witnesses testify in open court in the defendant's presence; (3) question those prosecution witnesses; and (4) require any favorable witnesses to testify for the defense in court." Minn. R. Crim. P. 26.01, subd. 3(a); *State v. Wright*, 679 N.W.2d 186, 191 (Minn. App. 2004), *review denied* (Minn. June 29, 2004). We have held that rule 26.01, subdivision 3(a), must be strictly complied with for each issue waived. *State v. Antrim*, 764 N.W.2d 67, 70 (Minn. App. 2009); *see also* Minn. R. Crim. P. 26.01, subd. 3(c). Failure to obtain a valid waiver may result in the reversal of a defendant's conviction. *Antrim*, 764 N.W.2d at 71.

Here, appellant's stipulation was made orally on the record. A fair reading of the transcript leads us to conclude that appellant actively participated in the stipulation discussion. The transcript even reflects that the district court tried to persuade appellant *not* to stipulate to the prior-conviction element, informing him that because he wished to have a bench trial, his stipulation would not serve the same strategic purpose as it would if he were in front of a jury. But it is also true that while appellant personally verified his past conviction and his understanding of its consequences, he did not explicitly agree to waive his rights as described in Minn. R. Crim. P. 26.01, subd. 3. We therefore must conclude that the district court erred by accepting appellant's stipulation to the prior-conviction element of his offense. *See State v. Craig*, 807 N.W.2d 453, 466-67 (Minn. App. 2011) (determining that the district court failed to obtain an adequate waiver where defendant agreed to stipulate to his prior-offense element but did not explicitly waive his rights as listed in rule 26.01, subd. 3(a)), *aff'd*, 826 N.W.2d 789 (Minn. 2013). But that does not end our inquiry.

6

The next issue presented is whether the district court's error, which was unobjected to at trial, was plain error. *See State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011) (determining that failure to obtain a proper waiver of an element of an offense is "trial error," and when it is unobjected to at trial, it should be reviewed for plain error). Under plain-error analysis, we must determine whether there was error, that was plain, and that affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If each of these prongs is met, we will address the error only if it seriously affects the fairness and integrity of the judicial proceedings. *Id.* An error is plain if it is clear or obvious. *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008). An error affects substantial rights if the error was prejudicial and affected the outcome of the case. *Griller*, 583 N.W.2d at 741.

We conclude that the plain-error standard is not met here because appellant has not shown that his substantial rights were affected. The existence of appellant's prior conviction was not contested at trial, nor does appellant contest the existence of his prior conviction on appeal. *See Hinton*, 702 N.W.2d at 282 (holding that the district court's failure to obtain a proper stipulation did not affect the defendant's substantial rights when the defendant did not challenge the existence of his prior convictions and the record reflected that they had occurred). At trial, appellant opted not to call any witnesses, but he cross-examined the state's witnesses, challenged the state's evidence, and argued against the remaining element of his offense. *See State v. Kuhlmann*, 780 N.W.2d 401, 405-06 (Minn. App. 2010) (recognizing the "deeply significant differences" between the rights given up by foregoing a jury trial and the rights given up when stipulating only to

7

an element of the offense), *aff'd*, 806 N.W.2d 844 (Minn. 2011). Moreover, if necessary, the state could have easily proven that appellant had committed a crime of violence by introducing certified copies of his conviction into evidence. *See Craig*, 807 N.W.2d at 468 (holding that appellant's invalid stipulation to his prior felony conviction that made him ineligible to possess a firearm was harmless because it was "an objective fact and would have easily been proved by public records").

We conclude that the failure to obtain appellant's waiver of his rights as described in Minn. R. Crim. P. 26.01, subd. 3(a), did not affect the outcome of the case, nor was this error unfairly prejudicial. Therefore, appellant's substantial rights were not adversely affected. Because we have concluded that the error did not affect appellant's substantial rights, we need not consider whether the error was plain, or whether the error seriously affects the fairness and integrity of the judicial proceedings. *See State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007) (stating that "[i]f a defendant fails to establish that the claimed error affected his substantial rights, we need not consider the other [plain-error] factors.").

## II.

We next must determine whether the district court erred by admitting hearsay statements under Minn. R. Evid. 807. Appellant argues that both D.P.'s and Dortch's prior statements to police are not trustworthy and do not meet the requirements of rule 807. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was

thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

We first note our agreement that the disputed statements are hearsay. *See* Minn. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Such statements are generally inadmissible absent an exception. Minn. R. Evid. 802. Under Minn. R. Evid. 807, the residual exception to the hearsay rule, a hearsay statement offered as substantive evidence is admissible if (1) the statement is offered as evidence of a material fact, (2) the proponent of the statement gives the adverse party sufficient notice that it intends to offer the statement, (3) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, (4) admission of the statement best serves the general purposes of the rules of evidence and the interests of justice, and (5) the statement has "circumstantial guarantees of trustworthiness." *See also Oliver v. State*, 502 N.W.2d 775, 777-78 (Minn. 1993) (stating that in situations where a witness recants and the state offers the witness's prior statement for impeachment purposes the defendant has "a legitimate cause to complain," because "there is a large risk that the jury, even if properly instructed, will consider the prior statement as substantive evidence." But where "the prior statement is [admitted] as substantive evidence of the defendant's guilt, then the . . . defendant has no legitimate cause to complain").

In *State v. Ortlepp*, the supreme court determined that a hearsay statement had "circumstantial guarantees of trustworthiness" because (1) the admission of the statement

did not violate the Confrontation Clause of the Sixth Amendment since the declarant was available for cross-examination, (2) it was undisputed that the declarant made the statement and it was recorded, (3) the statement was against the declarant's penal interest, and (4) the statement was consistent with all of the other evidence that the state introduced. 363 N.W.2d 39, 44 (Minn. 1985). But importantly, these factors do not constitute a strict test for determining admissibility of evidence under rule 807; rather, appellate courts must examine the totality of the circumstances in determining if the statements have sufficient guarantees of trustworthiness. *State v. Martinez*, 725 N.W.2d 733, 737 (Minn. 2007). We examine both D.P. and Dortch's hearsay statements in turn.

## A.    D.P.'s Hearsay Statements

Appellant disputes the admission of D.P.'s statements to police that "Chewy" and "Shorty D" were the occupants of the green Kia, that "Chewy" was James Dortch, and that "Shorty D" had dreadlocked hair. Appellant does not dispute that D.P.'s statements were offered as evidence of a material fact—that is, they were offered to prove appellant's identity as the man in possession of the firearm. We further conclude that under these circumstances the state provided sufficient notice to defense counsel that it intended to introduce D.P.'s hearsay statements into evidence. D.P. unexpectedly recanted his earlier statements to police while on the witness stand. Providing notice to appellant before trial would have been unrealistic. D.P.'s statements were more probative than any other evidence the state could procure. The statements reflect the personal knowledge of D.P. on the date of the offense and were made before he had any contact with his parents, who told him not to talk to the police or in court.

10

Moreover, the only witnesses who were able to identify appellant as the individual in the green Kia were D.P. and Dortch. Other witnesses were only able to testify that the man in the passenger seat had dreadlocked hair. Finally, the admission of D.P.'s statements serves the general purpose of the rules of evidence and the interests of justice by assisting the district court in ascertaining the truth. *See* Minn. R. Evid. 102 (stating that the rules shall be construed "to the end that the truth may be ascertained"). By allowing these statements into evidence, the district court was better able to evaluate D.P.'s credibility. Thus, we conclude that the first four requirements of rule 807 are satisfied.

We further conclude that rule 807's fifth requirement, that the statement have "guarantees of trustworthiness" as contemplated in *Ortlepp*, is satisfied. The first *Ortlepp* factor, confrontation under the Sixth Amendment, is not an issue here; D.P. testified at trial and was available for cross-examination. The second *Ortlepp* factor is similarly satisfied. Under the second factor, the state must show that there is "no dispute as to whether the declarant actually made the statement." *State v. Robinson*, 699 N.W.2d 790, 798 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006). The record establishes that D.P. actually made these statements to police; his statements were recorded and two officers testified that they interviewed and recorded D.P. The third *Ortlepp* factor similarly weighs in favor of admissibility. Although D.P.'s statements were not against his penal interests, his statements were made against the interest of his safety and his fear of being labeled a "snitch." *See State v. Jones,* 755 N.W.2d 341, 353 (Minn. App. 2008), *aff'd,* 772 N.W.2d 496 (Minn. 2009) (holding that "statements do not have to be directly

11

against [that person's] own penal interests"). As to the fourth *Ortlepp* factor, we agree with appellant that it weighs against admissibility. D.P.'s statements to police were consistent with a majority of, but not all of the evidence presented at trial. One witness testified that appellant was not the passenger in the green Kia; rather, the passenger was a "lighter skinned" man. Because D.P.'s statements were not consistent with all of the evidence at trial, this factor weighs against admissibility.

Although one of the *Ortlepp* factors weighs in appellant's favor, these factors do not constitute a strict test for determining admissibility under rule 807. Rather, we must look to the totality of the circumstances. *Martinez*, 725 N.W.2d at 737. Here, D.P.'s identifications were made and recorded very shortly after the incident, before there was any opportunity to fabricate, for his memory to fade, or for D.P. to contemplate the possibly dangerous consequences of "snitching." Considering the totality of these circumstances, we conclude that the district court properly exercised its discretion in admitting D.P.'s hearsay statements.

### B. Dortch's Hearsay Statement

Appellant disputes the admission of Dortch's hearsay statement to police that "Shorty D" was with him in the green Kia on the date of the offense. At trial, Dortch testified that he had been pressured by police to identify his passenger, and that he falsely identified "Shorty D" rather than his actual passenger, Mikey.

As with D.P.'s hearsay statements, we conclude that the first four elements of rule 807 have been satisfied. Dortch's statements were offered as evidence of a material fact; that is, that appellant was the individual in the passenger seat of the green Kia. And with

regard to the notice requirement, Dortch unexpectedly recanted on the witness stand. Providing notice to the defense before trial was impractical. Dortch's statements are more probative than any other evidence the state offered. This is indicated in the trial transcript where counsel for both sides described Dortch as an "essential" witness. Finally, admission of Dortch's hearsay statements serves the general purpose of ensuring that the truth is ascertained. *See* Minn. R. Evid. 102.

The fifth requirement, that the statement have "guarantees of trustworthiness" as contemplated in *Ortlepp*, is also satisfied here. Confrontation under the Sixth Amendment is not an issue; Dortch was cross-examined at trial. And there is no dispute that Dortch made this statement to police. Dortch admitted that he told police during his interview that "Shorty D" was in the passenger seat, and his interview was recorded. Dortch's statements were made against his interests, as they were made against the interest of his friendship with appellant. *See State v. Whiteside*, 400 N.W.2d 140, 146 (Minn. App. 1987) (concluding that the district court did not abuse its discretion by admitting a statement of defendant's girlfriend that incriminated defendant where the girlfriend was clearly hostile to the prosecution and her statements were made against the interest of her relationship with the defendant and his penal interests), *review denied* (Minn. Mar. 18, 1987). Finally, we agree with appellant that the fourth *Ortlepp* factor weighs against admissibility. Dortch's hearsay statement is consistent with a majority of the state's evidence, but not all of it. One witness's testimony contradicts Dortch's statements to the police and corroborates Dortch's trial testimony that his passenger was a "light skinned" male.

13

Considering the totality of these circumstances, we conclude that Dortch's hearsay statements had sufficient guarantees of trustworthiness and met the additional requirements of rule 807. Therefore, the district court properly exercised its discretion in admitting Dortch's hearsay statements.

**Affirmed.**